IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,  :

              APPELLEE,      :

          v.                    :          APPEAL NO. 18-3053

WHEELER ZAMICHIELI,          :

           APPELLANT      :
_____

ON APPEAL FROM A FINAL JUDGMENT OF CONVICTION AND
SENTENCE OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(EDPA CRIMINAL NO. 12-182 (PBT))
_____

APPELLANT'S OPENING BRIEF
AND APPENDIX - VOLUME I OF V (pgs. 1-9)
_____

                        RICHARD COUGHLIN
                        Federal Public Defender

                        800-840 Cooper Street, Suite 350
                        Camden, New Jersey 08102
                        (856)757-5341

                        Attorney for Appellant
                        Wheeler Zamichieli

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................... iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
     JURISDICTION................................................................................1

STATEMENT OF RELATED CASES ....................................................3

STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW .................3

STATEMENT OF THE CASE.................................................................5

    I.    The First Firearm Arrest Leads to a Second Arrest .........................5

    II.   Dismissal of First Case.........................................................8

    III.  First Trial and Appeal..........................................................9

    IV.  Sentencing .......................................................................13


SUMMARY OF THE ARGUMENT....................................................17

ARGUMENT......................................................................................20

    **POINT I – A new sentencing hearing is required to determine
    whether Mr. Zamichieli's 1994 assault and drug distribution arrests
    were improperly treated as separate criminal episodes for ACCA
    purposes when they arose out of the same series of related
    events…………………………………………………………………..20**

    **A.    Standard of Review**...................................................20

    **B.    Argument** .............................................................20

**POINT II - Mr. Zamichieli's right to due process was violated when the district court addressed a note from the jury outside the presence of the defendant and then responded to the note in writing rather than with an oral instruction to all jurors.**………….36

**A.    Standard of Review**.............................................................36

**B.    Argument** ...........................................................................36

**POINT III - A remand for a new sentencing hearing is required because the district court arbitrarily and unfairly limited Mr. Zamichieli's right to advocate for mercy when it precluded him from filing a sentencing memorandum.** ................................................43

**A.    Standard of Review**.............................................................43

**B.    Argument** ...........................................................................43

**POINT IV– The district court failed to resolve a dispute about the statute subsection involved in Mr. Zamichieli's 1994 aggravated assault conviction and improperly concluded that Mr. Zamichieli's prior conviction for assault was a crime of violence for ACCA purposes.**…………………………………………………………………….49

**A. Standard of Review** .............................................................49

**B. Argument**...............................................................................50

**1. The district court did not establish which subsection of the Pennsylvania aggravated assault statute Mr. Zamichieli was convicted of violating in 1994.** ......................................................51

**2. The Pennsylvania offense of aggravated assault on police officer requires only proof of a simple assault which implicates only bodily injury, and is therefore not a "violent" felony requiring the use of strong physical force.** ..................55

**Point V – The district court erred when it concluded that Mr. Zamichieli's 1988 and 1994 convictions for a violation of Pennsylvania's controlled substances act qualified as a predicate offenses for ACCA purposes.** .................................................................59

**A. Standard of Review** ................................................................................59

**B. Argument** ................................................................................................59

CONCLUSION ....................................................................................................62

CERTIFICATE OF COUNSEL, OF SERVICE, AND OF COMPLIANCE

APPENDIX - VOLUME I OF V (pages 1-9)

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Begay v. United States*, 553 U.S. 137 (2008)................................................... 29, 30

*Borden v. United States*, -- U.S. --,   2021 WL 2367312
(June 10, 2021) ........................................................................ 1,19,51,53

*Commonwealth v. Butler*, 354 Pa.Super 533 (1986) .............................................57

*Commonwealth v. Hewlett*, 2018 Pa.Super 151, 2018 WL 2676141 (2018)........57

*Descamps v. United States,* 133 S.Ct. 2276 *(2013)* ...............................................56

*Green v. United States*, 365 U.S. 301 (1961)..........................................................46

*Guam v. Marquez*, 963 F.2d 1311 (9th Cir. 1992);.................................................38

*Harris v. United States*, 536 U.S. 545 (2002)..........................................................31

*Johnson v. United States,* 559 U.S. 133 *(2010)*......................................................55

*Kelly v. United States*, 140 S. Ct. 1565 (2020),.....................................................26

*Mathis v. United States*, 136 S.Ct. 2243 (2016)......................................................57

*Rogers v. United States,* 422 U.S. 35 (1975). .........................................................38

*Shepard v. United States*, 544 U.S. 13 (2005) ...............................................passim

*Taylor v. United States,* 405 U.S. 575(1990)..........................................................56

*Turner v. Arkansas*, 407 U.S. 366 (1972)...............................................................27

*United States v. Adams*, 252 F.3d 276 (3d Cir. 2001)). ................................. 48, 49

*United States v. Bacerra*, 935 F.3d 995 (9th Cir. 2019).................................... 41, 42

*United States v. Bordeaux*, 886 F.3d 189 (2d Cir. 2018) ............................... 24, 32

*United States v. Bryant*, 136 S. Ct. 1954 (2016) .....................................................27

*United States v. Chapman*, 915 F.3d 139 (3d Cir. 2019) ............................. passim

*United States v. Clark*, 591 Fed.Appx. 367 (6th Cir. 2014) ...................................34

*United States v. Costello*, 720 Fed.Appx. 120 (3d.Cir. 2017) .............................56

*United States v. Dahl*, 833 F.3d 345 (3d Cir. 2016)...............................................56

*United States v. Daniels*, 915 F.3d 148 (3d Cir. 2019) .................................. 60, 61

*United States v. Doe*, 810 F.3d 132 (3d Cir. 2015) ...........................................3, 20

*United States v. Gibbs*, 656 F.3d 180 (3d Cir. 2011)...................................... 60, 61

*United States v. Glass*, 904 F.3d 319 (3d Cir. 2018) ................................ 16, 60, 61

*United States v. Hernandez-Hernandez*, 817 F.3d 207 (5th Cir. 2016) ................56

*United States v. Mann*, 552 Fed.Appx. 464 (6th Cir. 2014). ...............................33

*United States v Mayo*, 901 F.3d 218 (3d Cir. 2018)...................................... 19, 58

*United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020)..............................................61

*United States v. Noble*, 155 F.2d 315 (3d Cir. 1946). ............................. 38, 39, 41

*United States v. Olano*, 507 U.S. 725 (1993) ....................................................4, 36

*United States v. Peppers*, 899 F.3d 211 (3d Cir. 2018) ....................................5, 49

*United States v. Perry*, 479 F.3d 885 (D.C. Cir. 2007) .........................................39

*United States v. Plotts*, 359 F.3d 247, 251 (3d Cir. 2004) ....................................48

*United States v. Ramos*, 892 F.3d 599 (3d Cir. 201) ........................... 5, 53, 58, 59

*United States v. Santiago,* Third Circuit Docket No. 16-4194 .......................1, 53

*United States v. Schoolcraft,* 879 F.2d 64(3d Cir. 1989) .......................................32

*United States v. Sweeting,* 933 F.2d 962 (11th Cir. 1991)....................................33

*United States v. Toliver*, 330 F.3d 607 (3d Cir. 2003)…………………….……..38

*United States v. Towne*, 870 F.2d 880 (2d Cir. 1989) ...........................................32

*United States v. Vonn*, 535 U.S. 55 (2002) .........................................................4, 36

*United States v. Ward*, 732 F.3d 175 (3d Cir. 2013).............................................47

*United States v. Wheeler Zamichieli*, Crim. No. 11-393, 2011 WL 6133352, at *1 (E.D.Pa. Dec. 9, 2011) ...............................................................................................9

*Wooden v. United States*, __ U.S. __, __ S.Ct.__ 2022 WL 660610 (March 7, 2022)......................................................................................passim

## Statutes

18 U.S.C. § 922(g)............................................................... 6, 8, 16, 36, 55

18 U.S.C. § 922(g)(1) ...................................................................... 50, 58

18 U.S.C. § 924(a)(2). ...................................................................... 50, 55

18 U.S.C. § 924(e). ................................................................ 11, 14, 17, 52

18 U.S.C. § 924(e)(1) ..................................................... 27, 32, 50, 55

18 U.S.C. § 3231 ............................................................................1

18 U.S.C. § 3742(a) ......................................................................1

28 U.S.C. § 1291 ..........................................................................1

## Rules

Federal Rules of Appellate Procedure Rule 4(b)(1) ...........................................1

Federal Rules of Criminal Procedure 32......................................................14, 47

## Other Authorities

18 Pa. C.S. § 2702 ....................................................................19

18 Pa. C.S. § 2702(a)(2) .......................................................... 19, 52

18 Pa. C.S. § 2702(a)(3) ..............................................................passim

18 Pa.C.S.A. § 5104 .................................................................58

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

The United States District Court had subject matter jurisdiction

pursuant to 18 U.S.C. § 3231, which confers upon the district courts original

jurisdiction over all offenses against the laws of the United States.

Appellate jurisdiction is conferred upon the Court of Appeals for the

Third Circuit by 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Appellant Wheeler Zamichieli complied with Rule 4(b)(1) of the

Federal Rules of Appellate Procedure by filing a timely Notice of Appeal.

The district court imposed sentence on September 10, 2018 and entered its

judgment on September 17, 2018. (A 2-9; DE 403 )[1] Zamichieli filed his

timely Notice of Appeal on September 13, 2018. (A1; DE 400) The briefing

schedule was continued due to the pendency of an *en banc* decision in

*United States v. Santiago*, Third Circuit Dkt. No. 16-4194, which was itself

delayed pending the decision in *Borden v. United States*, -- U.S. --,   2021 WL

2367312 (June 10, 2021). No briefing schedule was issued, and in the

---

[1] "A" refers to the Appellant's Appendix filed with this brief. "PSR" refers
to the Presentence Investigation Report filed under seal in this matter.
"StR" refers to the district court's Statement of Reasons attached to the
Judgment of Conviction. "DE" refers to the District Court Docket Entries.

meantime, the Supreme Court granted certiorari in *Wooden v. United States,* a case which involved the application of the ACCA statute in a way that directly impacted Mr. Zamichieli's appeal. On March 7, 2022, the Supreme Court issued an opinion favorable to Mr. Zamichieli. See *Wooden v. United States*, -- U.S.--, -- S.Ct.--, 2022 WL 660610 (March 7, 2022). Mr. Zamichieli has served nearly 10 years in prison – a term which would be the statutory maximum should he prevail on his sentencing challenges.

## STATEMENT OF RELATED CASES

Wheeler Zamichieli's appeal following conviction in this case resulted in a remand for a new trial. Third Circuit Court of Appeals Docket No. 13-2091.

## STATEMENT OF THE ISSUES AND STANDARDS OF REVIEW

(1) Did the district court fail to consider and resolve whether Mr. Zamichieli's 1994 assault and drug distribution arrests that were counted as two predicate ACCA convictions were in fact related offenses that arose on the same occasion from the same criminal episode?

Standard of Review: The determination of whether offenses were committed on the same "occasion" for ACCA purposes presents a mixed question of fact and law. Factual determinations are reviewed for clear error and questions of law are subject to *de novo* review. *Wooden v. United States*, -- U.S.--, -- S.Ct.--, 2022 WL 660610 (March 7, 2022); *United States v. Doe*, 810 F.3d 132, 142 (3d Cir. 2015).

(2) Did the district court violate Mr. Zamichieli's right to due process

when it failed to produce the defendant when a question from the jury was discussed and then responded to the question with a written instruction rather than an oral instruction to all jurors?

Standard of Review: To obtain relief for unpreserved error, the appellant must show the error was "plain, prejudicial, and disreputable to the judicial system." *United States v. Vonn*, 535 U.S. 55, 65 (2002); *see United States v. Olano*, 507 U.S. 725 (1993).

(3) Did the district court improperly restrict Mr. Zamichieli's ability to advocate for mercy at sentencing when it precluded him from filing a sentencing memorandum or other forms of written advocacy, while allowing the government to proceed without any limitation?

Standard of Review: A district court's decision to restrict a defendant's opportunity to advocate for leniency is reviewed for abuse of discretion. *United States v. Chapman*, 915 F.3d 139 (3d Cir. 2019).

(4) Did the district court err when it failed to resolve a dispute about what section of the Pennsylvania aggravated assault statute was involved in Mr. Zamichieli's 1994 conviction and further erred when it concluded

that the crime of simple assault on a police officer was a crime of violence

for ACCA purposes?

Standard of Review: This Court reviews *de novo* whether a prior

conviction was properly classified as a crime of violence for ACCA

purposes. *United States v. Peppers*, 899 F.3d 211, 220 (3d Cir. 2018).

(5) Did the district court err when it concluded that Mr. Zamichieli's

prior Pennsylvania drug convictions were ACCA predicate convictions?

Standard of Review: The question of whether a prior conviction

qualifies as an ACCA predicate is a question of law subject to de novo

review. *United States v. Ramos*, 892 F.3d 599 (3d Cir. 2018).

## STATEMENT OF THE CASE

### I.  The First Firearm Arrest Leads to a Second Arrest

On February 20, 2011, Wheeler Zamichieli was arrested by

Philadelphia Police Officers after a search of the vehicle he was driving

disclosed a firearm that he was alleged to have illegally possessed. (PSR ¶

11).   Mr. Zamichieli was released on bail, and on July 13, 2011, parked his

red Chevy Impala near Broad and Erie Streets in Philadelphia so that he
could travel by subway to the Court of Common Pleas for a court hearing
relating to the gun possession charge. (A462-464: 466) As he approached
the Criminal Justice Center, Mr. Zamichieli was unaware that the United
States Attorney for the Eastern District had decided to adopt the firearms
prosecution and that ATF Special Agent Patrick Henning was waiting at
the State courthouse with a warrant for his arrest. (A457-461)

After arresting Mr. Zamichieli, Agent Henning transported him to
the United States Courthouse for processing and for an initial appearance
on what was now a federal felon in possession charge, in violation of 18
U.S.C. § 922(g). (A457-461) During processing, Mr. Zamichieli's automobile
keys were confiscated, and Mr. Zamichieli asked the agent to contact his
girlfriend, Santina Simmons, to retrieve the car. (A463-464) Unlike
Common Pleas Court, Mr. Zamichieli was not released from custody
following his arrest, and was instead detained at the Philadelphia Federal
Detention Center (F.D.C.) pending trial. (A465) As requested, Agent
Henning contacted Ms. Simmons to advise her of the arrest, the location of

6

the red Impala, and to arrange to deliver the car keys. (A464) Ms. Simmons

was unable to retrieve the keys until the following day, so she arranged to

have the car towed to her house on the evening of July 13. (A573-575) The

following day Ms. Simmons met Agent Henning at his office and collected

the keys. (A470-471)

In the days and weeks following his federal arrest, Mr. Zamichieli

engaged in a series of telephone and email exchanges with Ms. Simmons

and a man named Hakiem Harris. (A473-474) Agent Henning, who was

helping to prepare the prosecution of the pending gun charge, obtained

telephone call recordings and emails from the F.D.C. (A470-471) The agent

soon surmised that some of the communications involved the removal of

contraband from the red Chevy Impala that Mr. Zamichieli had left at

Broad and Erie on July 13, 2011. (A477-482) Agent Henning further

concluded that the item was retrieved by Ms. Simmons who subsequently

sold it to Hakiem Harris. (A473-495) Further investigation, including

interviews with Ms. Simmons and Mr. Harris revealed that Ms. Simmons

had retrieved a handgun from a secret compartment in the Chevy Impala

and that she had sold the gun to Mr. Harris for $400 at the direction of Mr.

Zamichieli. (A495-502) Mr. Harris eventually surrendered the firearm to

Agent Henning in November 2011 and disclosed that prior to Mr.

Zamichieli's July 13, 2011 arrest, he had discussed the sale of the handgun

with Mr. Zamichieli. (A502-504; 672-675)

In February 2012, Mr. Harris was charged in federal court in

connection with illegal possession of the firearm in connection with a drug

distribution offense. (A507; 703) Mr. Harris agreed to cooperate with the

authorities and was sentenced to one day in prison and five years

probation. (A693-700; 702-703) Ms. Simmons was not charged with any

criminal offense and testified on behalf of the government. On April 19,

2012, Mr. Zamichieli was charged in a single count indictment with

possession of a firearm by a convicted felon, in violation of 18 U.S.C. §

922(g). (DE1)

## II.    Dismissal of First Case

Mr. Zamichieli moved to suppress the firearm that was seized on

February 20, 2011, *i.e.*, the first gun, on the ground that it was the fruit of an

illegal search conducted in violation of the Fourth Amendment. (A57-58; 102-107; 118-139; 199) In December 2011, several months after the FDC phone calls concerning the sale of the gun in the Impala were recorded, the district court, the Honorable Berle M. Schiller presiding, heard testimony from the Philadelphia arresting officers and Mr. Zamichieli. *See United States v. Wheeler Zamichieli*, Crim. No. 11-393, 2011 WL 6133352, at *1 (E.D.Pa. Dec. 9, 2011). Finding the officers' account of sighting the gun in plain view "implausible", the court credited Mr. Zamichieli's testimony that the officers had in fact conducted a full-blown search that turned up the revolver under the passenger seat. *Id*. at *2. Judge Schiller accordingly ordered the gun seized on February 20, 2011 suppressed, and the case was dismissed on the government's motion.

### III.   First Trial and Appeal

Mr. Zamichieli's FDC gun case, *i.e.*, the second gun, was assigned to the Honorable Legrome D. Davis, United States District Judge. In the weeks before trial, a series of hearings revealed a failure to provide timely discovery by the government which had contributed to a growing lack of

trust by Mr. Zamichieli in his retained counsel. (A90-92) The pretrial

hearings included a suppression hearing. The gist of the suppression

motion was that the illegal search conducted in connection with the

February 20, 2011 firearm somehow tainted the investigation that led to the

charges relating to the gun that was hidden in the Impala on July 13, 2011.

(A118-139) After it first appeared that the motion was withdrawn by

counsel, the district judge, hearing from Mr. Zamichieli, conducted an

evidentiary hearing. (A118-139) When the testimony did not support Mr.

Zamichieli's account, the district court concluded that suppression of the

gun was not warranted because the FDC gun charge was sufficiently

attenuated from the suppressed gun charge so that any "taint" from the

unlawful search had been removed. (A199) In this regard, the Court also

concluded that because there was no government search, *i.e.,* Ms. Simmons

retrieved the gun from the car, there was no basis to suppress the firearm.

(A197-199) A motion to suppress the recorded jail conversations was

withdrawn by counsel and never preserved or adjudicated before either

trial. (A83) Eventually, Mr. Zamichieli asked for new counsel. Instead of

new counsel being appointed, Mr. Zamichieli was ordered to represent himself and proceed to trial *pro se.* (A90-92; 219-225; 250-255)

Following his conviction, and the imposition of a 210-month sentence, counsel was appointed for purposes of appeal. (DE292; 302) The brief filed on Mr. Zamichieli's behalf raised three issues. The first ground for appeal alleged that Mr. Zamichieli's Sixth Amendment right to counsel was violated when his request for appointed counsel was denied without a valid waiver. The second ground involved the jury instructions, and the third challenged the application of the 18 U.S.C. § 924(e) "ACCA" enhancement that was predicated in part upon Mr. Zamichieli's prior convictions for aggravated assault in Pennsylvania state court. The government conceded error on the Sixth Amendment claim and the conviction was vacated, and the case was remanded for a new trial. (DE311) The remaining issues were not adjudicated.

The remanded case was assigned to the Honorable Patrice B. Tucker, United States District Judge. (DE316) After a series of counsel changes and periodic requests for new counsel and colloquies to determine whether Mr.

Zamichieli chose to exercise his right to represent himself, the trial

commenced before Judge Tucker and a jury on March 19, 2018. (DE356;

A301-313) Mr. Zamichieli was represented at trial by appointed counsel.

(DE356; A285) Pretrial rulings from the first trial were referenced and

relied upon to preserve issues for appeal. These motions and discussions

included a renewed *pro se* motion to suppress based upon the "taint"

theory Judge Davis rejected, and an explanation by counsel as to why a

motion to suppress the prison calls and emails would not be filed

notwithstanding Mr. Zamichieli's insistence. (A312-315)

The second trial commenced in March of 2018, and proceeded much

as the first had with Ms. Simmons and Mr. Harris recounting the

circumstances that resulted in the sale of the gun, and Ms. Simmons further

explaining what she did with the proceeds of the sale. (A580-592) In this

context, both Ms. Simmons and Mr. Harris explained that the recorded

conversations and emails concerned the sale of the firearm and that their

actions were predicated upon Mr. Zamichieli's instructions. Agent

Henning recounted the arrest of Mr. Zamichieli, including the post-arrest

conversation that led to Agent Henning informing Ms. Simmons about the location of the red Chevy Impala and his delivery of the keys to her the day following Mr. Zamichieli's July 13, 2011 arrest. (A463-465) Agent Henning further detailed his meetings with Ms. Simmons and Mr. Harris and confirmed that Mr. Harris had surrendered the gun to him in November 2011. (A493-495)

On March 26, 2018, the Court received a question from the jury concerning proof of the interstate commerce element. (A877-880; 1190-1191) Rather than wait for Mr. Zamichieli to be present, the Court decided to answer the jury question with a written submission. (A880-882) A short time later, the guilty verdict was returned. (A882-885) Afterwards, Mr. Zamichieli invoked his right to self-representation, and proceeded to sentencing without counsel. (A889-897)

## IV.   Sentencing

After a series of continuances, sentencing was scheduled for August 9, 2018. (DE380; 389) In the meantime, Mr. Zamichieli filed *pro se* motions for a new trial and judgment of acquittal. (A1027; 1032-1080) When Mr.

Zamichieli appeared, he explained that he was unprepared to proceed and requested a further continuance so that he could file his objections to the presentence report and respond to the government's sentencing memorandum. (DE393; A900-907) The district court adjourned the sentencing to September 10, 2018, to afford Mr. Zamichieli an opportunity to file objections to the final report, but when Mr. Zamichieli asked whether he could also submit a sentencing memorandum, the district court denied the request and limited Mr. Zamichieli's written advocacy to objections to the presentence report. (A915-918)

The final presentence report was unaltered and did not reflect Mr. Zamichieli's objections. (A959-961) When Mr. Zamichieli suggested to the Court that the failure of the probation office to issue a new report detailing his objections was a violation of Federal Rule of Criminal Procedure 32, the district judge allowed Mr. Zamichieli to orally raise his objections to the report at the sentencing hearing. (A961-964) Among other issues raised by Mr. Zamichieli were arguments concerning the applicability of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). (A964-971) Mr. Zamichieli

14

disputed the government's assertions and proofs regarding the statutory provision that formed the basis for his 1994 aggravated assault conviction and further maintained that it did not qualify as a crime of violence predicate. (A964-971; 981-998) Mr. Zamichieli further argued, and provided supporting *Shepard*[2] documents to the court, that his 1994 drug and aggravated assault convictions arose out of the same episode and that as a result, the two convictions should be treated as one for ACCA purposes. (A983-986; 1113-1119) Mr. Zamichieli also argued that his prior drug conviction could not be considered for ACCA purposes, because the Pennsylvania drug distribution statute sweeps more broadly than the federal definition allows. (A983-986)

The district court rejected Mr. Zamichieli's objections and arguments, and essentially concluded that ACCA applied because aggravated assault, in any form under the Pennsylvania statute, is a crime of violence and separate convictions standing alone were enough to prove separate

---

[2] *Shepard v. United States*, 544 U.S. 13 (2005).

occasions for ACCA. (A985) The district court did not resolve or explain how it resolved a dispute about which statutory subsection of the aggravated assault statute was involved in Mr. Zamicieli's 1994 conviction, nor did the court fully address the circumstances of Mr. Zamichieli's arrest for the 1994 assault and drug convictions to determine whether they arose on the same occasion from the same criminal episode. *Wooden v. United States*, 595 U.S.--, -- S.Ct.--, 2022 WL 660610 (March 7, 2022). (A985) The decision by this Court in *United States v. Glass*, 904 F.3d 319 (3d Cir. 2018) was relied upon to dispose of the objection regarding the prior drug convictions. (A972) A sentence of 210 months was reimposed on September 10, 2018. (A 2-9; DE398). A timely notice of appeal was filed on September 13, 2018. (A 1; DE 400). On December 14, 2018, this Court entered an order appointing the Federal Public Defender for the District of New Jersey to represent Mr. Zamichieli. (A10) Briefing was stayed pending the resolution of Circuit and Supreme Court cases and Mr. Zamichieli has now served nearly 10 years in prison – the statutory maximum for a non-ACCA conviction under 18 U.S.C. § 922(g) – and would be eligible for immediate

release if his challenge to his ACCA designation is granted.

This appeal follows.

## SUMMARY OF THE ARGUMENT

Wheeler Zamichieli was convicted after retrial of illegal possession of a firearm by a convicted felon. Mr. Zamichieli was also subjected to a sentence enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). Mr. Zamichieli first submits that a new sentencing hearing is required to determine whether his 1994 aggravated assault and drug distribution arrests were improperly treated as separate criminal "occasions" for ACCA purposes when they arose out of the same series of events. *See Wooden v. United States*, 595 U.S.--, -- S.Ct.--, 2022 WL 660610 (March 7, 2022). The intent of the ACCA statute is to punish individuals who repeatedly engage in separate instances of serious criminal conduct rather than individuals who engaged in a single episode of criminal conduct that produced multiple charges. Here, the district court failed to engage in any analysis of the factual circumstances surrounding Mr. Zamichieli's assault and drug convictions, which he maintains arose from a

single episode of criminal conduct. The district court's failure to resolve this contested issue requires a remand for resentencing.

Second, Mr. Zamichieli respectfully contends that he is entitled to a new trial because his right to due process was violated when the district court addressed a note from the jury outside of Mr. Zamichieli's presence and then responded to the note in writing rather than with an oral instruction to all jurors.

Mr. Zamichieli is also entitled to a remand for resentencing due to several errors made by the district court. Initially, the district court arbitrarily and unfairly limited Mr. Zamichieli's right to advocate for mercy at sentencing by precluding him from filing a sentencing memorandum. The prejudice to Mr. Zamichieli was compounded by the court's failure to impose similar restrictions on the government's written sentencing submissions.

Next, the district court erred by failing to resolve a dispute about which subsection of Pennsylvania's aggravated assault statute Mr. Zamichieli was convicted under in 1994. The court determined only that

18

aggravated assault is a crime of violence. But aggravated assault under 18 Pa. C.S. § 2702 can be committed in several different ways with different *mens rea*, making it divisible. *See United States v. Mayo*, 901 F.3d 218, 225 (3d Cir. 2018). And after *Borden v. United States*, __ U.S. __, 2021 WL 2367312 (June 10, 2021), a conviction under a statutory provision requiring only reckless *mens rea* does not qualify as a crime of violence. Aggravated assault can be committed under 18 Pa. C.S. § 2702(a)(2) and (a)(3) with a *mens rea* of recklessness. If Mr. Zamichieli's conviction was under § 2702(a)(3), he was improperly subjected to the ACCA enhancement. Therefore, Mr. Zamichieli's sentence must be vacated and his case remanded for resentencing so the district court can determine which subsection of Pennsylvania's aggravated assault statute Mr. Zamichieli was convicted under in 1994.

Finally, Mr. Zamichieli submits that the district court erred in concluding that his 1988 and 1994 drug convictions qualified as predicate offenses for ACCA purposes because the statutes of conviction swept more broadly than the ACCA definition of serious drug offense. Mr. Zamichieli

19

recognizes that this particular argument is foreclosed by current Third

Circuit precedent but raises the issue to preserve it for further review.

**ARGUMENT**

**POINT I – A new sentencing hearing is required to determine whether Mr. Zamichieli's 1994 assault and drug distribution arrests were improperly treated as separate criminal episodes for ACCA purposes when they arose out of the same series of related events.**

**A.    Standard of Review**

The determination of whether offenses were committed on the same

"occasion" for ACCA purposes presents a mixed question of fact and law.

Factual determinations are reviewed for clear error and questions of law

are subject to *de novo* review. *Wooden v. United States*, 595 U.S.--, -- S.Ct.--,

2022 WL 660610 (March 7, 2022); *United States v. Doe*, 810 F.3d 132, 142 (3d

Cir. 2015).

**B.    Argument**

On March 24, 1994, Mr. Zamichieli, while in possession of drugs, was

approached by police officers. (A977-982) Rather than submit to their

authority, he fled and was arrested a short time later and charged in

connection with the drugs that he possessed. A day or so later, he was

charged separately was aggravated assault in connection with the events

surrounding his flight from the police. (A977-982) Although there is some

confusion and perhaps some dispute about the exact timing and sequence

of events surrounding Mr. Zamichieli's March 1994 assault and drug

arrests, Mr. Zamichieli maintains that the government failed to establish

that the convictions constituted separate "occasions" for ACCA purposes

and that the district court failed to resolve material discrepancies

concerning the events that gave rise to the convictions and further failed to

determine whether because the convictions arose out of the same *occasion*

or *series of events*, they should have been regarded as a single offense for

ACCA purposes. *Wooden v. United States*, 595 U.S.--, -- S.Ct.--, 2022 WL

660610, at * 14 (March 7, 2022).

According to the government, the records of the arrests were

incorrect in at least one important way. Rather than occurring on different

days, the government acknowledged that the events occurred sequentially

on the same day – March 24, 1994. (A974-976) The Presentence Report indicated that Mr. Zamichieli engaged in an assault on March 23, 1994 and was arrested two days later on March 26, 1994. (PSR 36) In the meantime, according to the report, Mr. Zamichieli had been arrested on March 24, 1994 – several blocks from where the assault occurred – after he was seen discarding drugs. (PSR 35) Mr. Zamichieli maintained, like the government, that the arrests events occurred on the same day and explained that he was carrying drugs for distribution when he was approached by a police officer. Rather than submit to the officer's authority, he fled. (A977-982) The police gave chase, and Mr. Zamichieli was found a short time later after he allegedly discarded drugs and tried to flee again. (A977-982)

Mr. Zamichieli was charged in separate filings with possession of drugs with intent to distribute and multiple counts of aggravated and simple assault. (A1113-1119) He pled guilty to one of the aggravated assault charges in the assault complaint, and was sentenced in December 1994 to a prison term of 18 months to five years, which sentence was

ordered to run concurrently with any other sentence. (PSR 36) Mr.

Zamichieli's trial on the drug charge, however, did not take place until

1997 when he was adjudged guilty and sentenced to a term of five to ten

years in prison. (PSR 35)

Mr. Zamichieli maintained that because the offenses arose out of the

same series of related events, the convictions did not occur on different

occasions for ACCA predicate purposes. (A978-981) The government

maintained that the offenses were entirely separate because there were

different victims in different locations – a standard that does not survive

the decision in *Wooden*. *Wooden*, 2022 WL 660610, at * 8-9 (time, place,

relationship, intertwining series of events). (A974) Although the district

court ordered that the date of arrest for the assault be changed to March 24,

1994, the court never conclusively resolved the timing, location, and

relationship dispute much less whether the government had carried its

burden of proof on the "occasion" issue. Instead, the court simply

concluded both convictions counted for ACCA purposes. (A976; 985) This

decision requires reconsideration in light of *Wooden*.

On March 7, 2022 the Supreme Court concluded that the term

"occasion" as used in the ACCA statute must be interpreted consistent

with its ordinary meaning: "The ordinary meaning of the word 'occasion' –

essentially an episode or event- refutes the Government's single-minded

focus on whether a crime's elements were established at a discrete moment

in time….The origin of the "occasions' clause confirms that multiple crimes

may occur on one occasion even if not at the same moment." *Wooden*, 2022

WL 660610, at *5 (March 7, 2022). The 10 burglaries that Wooden

committed at the same storage facility on the same night were, therefore,

improperly counted as 10 separate offenses for ACCA purposes. The 10

convictions should instead have been counted as having occurred on one

"occasion" thus avoiding the ACCA enhancement.

The Court explained that, as used in ordinary speech, an "occasion"

encompasses the events arising from a particular juncture of circumstances

or common opportunity. *Wooden*, 2022 WL 660610, at *4. The "primary"

meaning of "occasion" embraces "the totality of circumstances giving rise

to an opportunity." *United States v. Bordeaux*, 886 F.3d 189, 195 (2d Cir.

2018). Conversely, physically proximate or close-in-time events may nevertheless occur on "different occasions" if they arise from distinct sets of circumstances. Context also explains why some interceding events are significant enough to generate separate occasions.

To determine whether offenses are separate for ACCA purposes, a range of circumstances must be considered, including the timing, location, character and relationship of the offenses. *Wooden*, 2022 WL 660610, at * 8-9. In applying this analysis to Wooden's 10 burglaries the Court noted that the offenses were committed in one night as part of a single course of conduct. *Id.* The offenses all occurred at a single storage facility. The offenses were nearly identical and were intertwined with each other as part of a related scheme or plan.

The Court also relied heavily on the history and purpose of the ACCA which is intended to target repeat, violent offenders and reminded courts to consider that history and purpose when assessing whether multiple convictions truly constitute separate occasions or are instead the result of a series of related events. *Id.*at * 8, 14. In this context, the Court

observed that Wooden was not transformed into a career criminal when he moved from the second to the third storage facility and that his case did not present the sort of "revolving door" pattern of violent offenders the ACCA seeks to incapacitate. *Id.*at * 14.

The fact that Mr. Zamichieli was charged and sentenced in separate proceedings is in no way dispositive after *Wooden*. Although a single indictment and sentencing hearing are often the common circumstances from which the separate, related convictions result, that is not always the case. Even if one conviction was entered before the court recessed for lunch and another afterwards, no one would say that the convictions were entered on "separate ... occasions." The lunch break, though it came between the convictions, would not qualitatively change the circumstances of the sentencing. Other examples point in the same direction.

In *Kelly v. United States*, 140 S. Ct. 1565 (2020), the Supreme Court described the closure of traffic lanes on the George Washington Bridge, during the morning rush hour on four consecutive days, as a "singular occasion." *Id*. at 1570. Though each closure was separated from the others

by a normal day's worth of traffic, the lane closures all arose to exploit the same politically motivated opportunity. *See also, e.g., United States v. Bryant*, 136 S. Ct. 1954, 1963 (2016) ("On one occasion, Bryant hit his live-in girlfriend on the head with a beer bottle and attempted to strangle her.") (emphasis added); *Turner v. Arkansas*, 407 U.S. 366, 368-69 (1972) ("[T]he State has stipulated that the robbery and murder arose out of 'the same set of facts, circumstances, and the same occasion.'")

The Supreme Court in *Wooden* emphasized that ACCA applies only to a defendant with three prior convictions for certain qualifying offenses, but only where the Government proves that the offenses were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). *Wooden*, 2022 WL 660610,at *10-14. The offenses must involve activities aimed at exploiting different criminal opportunities.

This is not merely a requirement that the offenses be distinct—a condition that Congress imposed simply by requiring that there be three of them. Rather, the inquiry focuses on the circumstances of their commission: Did the admittedly separate criminal acts arise from a juncture of the same

conditions, or in exploitation of a common opportunity? By way of example, the Court observed that

> [t]he occasion of a wedding, for example, often includes a ceremony, cocktail hour, dinner, and dancing. Those doings are proximate in time and place, and have a shared theme (celebrating the happy couple); their connections are, indeed, what makes them part of a single event. But they do not occur at the same moment: The newlyweds would surely take offense if a guest organized a conga line in the middle of their vows. That is because an occasion may—and the hypothesized one does—encompass a number of non-simultaneous activities; it need not be confined to a single one.

*Wooden*, 2022 WL 660610, at *5.

The key point for present purposes is that the question whether different ACCA predicates were "committed on occasions different from one another" must be answered by reference to the criminal opportunities that gave rise to each offense. Because that inquiry is circumstance-dependent, there is no reason to elevate one particular type of contextual clue above another, *e.g.,* location. Although factors such as timing and location – or charging and disposition - can be helpful, they do not merit special consideration—much less *per se* treatment. Indeed, treating any

28

single factor as dispositive would be especially unwarranted here and contrary to the decision in *Wooden*. The underlying circumstances that gave rise to a particular criminal opportunity are inherently varied and circumstance-dependent. To qualify for the severe ACCA enhancement the events underlying each conviction cannot not have been the intertwined and related continuing episode described by Mr. Zamichieli.

As noted above, the ACCA's structure, history, and purpose confirm that different "occasions" are separate criminal opportunities. As its name suggests, the Armed Career Criminal Act targets those who make a profession of lawbreaking. This title is "not merely decorative." *Begay v. United States*, 553 U.S. 137, 146 (2008) (citation omitted). Rather, the ACCA's requirements must be read so as to "effectuate Congress' purpose to punish only a particular subset of offender, namely, career criminals." *Id*. at 147. A career criminal is one who demonstrates a pattern of exploiting distinct criminal opportunities. The law's target is not the offender whose bad judgment in a single situation leads to multiple charges, but the seasoned professional whose extensive "criminal history" shows that he

29

cannot be deterred from his chosen vocation by regular punishment. *Begay*, 553 U.S. at 146.

Mr. Zamichieli's March 24, 1994, assault and drug convictions arose from the same criminal episode. Reading the phrase in accordance with its plain meaning—and consistent with the ACCA's structure, history, and purpose—Mr. Zamichieli's assault and drug possession offenses were not "committed on occasions different from one another." They arose from a single episode of continuous criminal activity exploiting a common opportunity; no intervening change in circumstances made his confrontation with a police officer while he possessed drugs for distribution and his apprehension a short time later with the same drugs a separate occasion.

Congress did not turn someone like Mr. Zamichieli—who exploits and extends a single episode of continuous criminal activity—into a career criminal subject to a fifteen-year mandatory-minimum sentence. That the defendant's conduct can give rise to multiple offenses, however, says nothing about whether those offenses were committed on the same

30

"occasion." Indeed, the presence of multiple offenses is the starting point for the ACCA inquiry; the "occasions" clause must set a different threshold.

And there are good reasons why the "occasions" threshold must be higher. When related criminal conduct is broken into multiple offenses, the sentencer usually has discretion to mitigate the harshness of that result by imposing concurrent sentences for those offenses. Under the ACCA, by contrast, once the sentencing judge determines that the enhancement applies, the statutory minimum of fifteen years is mandatory. *See Harris v. United States*, 536 U.S. 545, 570 (2002) (Breyer, J., concurring in part and in the judgment) ("[S]tatutory mandatory minimums generally deny the judge the legal power to depart downward, no matter how unusual the special circumstances that call for leniency."). The severity of that fact, of course, counsels in favor of applying a defendant-friendly construction of the text, if at all possible, as a matter of lenity. See *Wooden,* 2022 WL 660610 (Gorsuch, J., concurring). But more specifically, it means that the test for whether multiple offenses merit an ACCA enhancement must be far more

31

exacting than the test for whether multiple offenses can be charged at all.

In *United States v. Schoolcraft*, 879 F.2d 64, 73-74 (3d Cir. 1989), this Court relied upon decisions in the other Circuits when it considered the question of whether multiple convictions "arising out of a single spasm of criminal activity" may be counted for ACCA enhancement purposes. The Court noted the separate episode test had been adopted in every Circuit to have considered the question and had concluded that the number of convictions was not the proper measure. Rather, a court must determine whether the convictions arose out of separate criminal episodes: "Recently, the Second Circuit stated that 'it is fairly well-established in other circuits that § 924(e)(1)'s reference to 'convictions' pertains to single 'episodes' of felonious criminal activity that are distinct in time, rather than literal convictions.' *United States v. Towne*, 870 F.2d 880, 889 (2d Cir. 1989)." *Id.*

More recently, in *United States v. Bordeaux*, 886 F.3d 189, 196-97 (2d Cir. 2018), the Second Circuit discussed the criminal episode standard and noted that the task had been "to distinguish between the defendant who simply commits several offenses in a connected chain of events and the

defendant who is targeted by ACCA—someone who commits multiple crimes separated by substantial effort and reflection." In this context the Court noted that the term "occasions" should be understood "as the conjuncture of circumstances that provides an opportunity to commit a crime." *Id. See also e.g., United States v. Sweeting,* 933 F.2d 962, 967 (11th Cir. 1991) ("The underlying incident for Sweeting's prior conviction was the burglarizing of one home, fleeing to another home when the police approached, and hiding in a closet to escape detection by the police. We agree with appellant that this should count as only one conviction for purposes of sentencing, as it constitutes a single episode even though there were separate punishable acts."); *United States v. Mann*, 552 Fed.Appx. 464 (6th Cir. 2014) (defendant's prior convictions for aggravated battery and battery on a law enforcement officer were not separate criminal episodes committed on different occasions, so as to qualify as separate predicate convictions for purposes of application of ACCA in defendant's sentencing for possession of a firearm by a felon; immediately after police arrested defendant for the aggravated battery and put him in back of squad car, he

33

began kicking car door, demonstrating that he was still upset, and when officers came back to remove him from car, his agitation continued, culminating in his assault on the officer by kicking him in the shoulder, and there was no time for defendant to reflect on his actions and no break in which he could cool off); *United States v. Clark*, 591 Fed.Appx. 367 (6th Cir. 2014) (carjacking defendant's two prior state convictions for aggravated assault on a State Trooper were part of the same criminal episode, and thus only counted as one offense for purposes of sentencing him under the ACCA, where the assaults occurred during one continuous chase that crossed county lines while defendant was attempting to evade arrest.)

In this case, Mr. Zamichieli pled guilty and was sentenced in 1994 to a sentence that ran concurrent with any other sentence. The drug charge, however, was not resolved until April 1997 when Mr. Zamichieli was adjudged guilty and sentenced to a five-to-ten-year prison term. (PSR 35) The fact that Mr. Zamichieli chose to plead guilty to one aspect of the criminal episode and exercise his right to be tried on another aspect of the

event, does not change the fact that the charges arose out of the same episode and occurred on the same occasion. This is especially so where the circumstances are such that the drug offense was being committed at the same moment that the assault occurred, and simply continued to occur until Mr. Zamichieli was apprehended a short time later.

Here the district court all but ignored the issue that was joined. The court undertook no further analysis to determine whether the offenses occurred on different occasions or were part of the same criminal episode. Likewise, the court failed to analyze the factual circumstances to ascertain whether the government had met its burden of proving that the offenses indeed met the ACCA test of having arisen from separate episodes which occurred on separate occasions. Accordingly, Mr. Zamichieli respectfully submits that at a minimum his sentence should be vacated and remanded for a new sentencing hearing.

**POINT II - Mr. Zamichieli's right to due process was violated when the district court addressed a note from the jury outside the presence of the defendant and then responded to the note in writing rather than with an oral instruction to all jurors.**

## A.    Standard of Review

To obtain relief for unpreserved error, the appellant must show the error was "plain, prejudicial, and disreputable to the judicial system." *United States v. Vonn*, 535 U.S. 55, 65 (2002); *see United States v. Olano*, 507 U.S. 725 (1993).

## B.    Argument

On March 23, 2018, the district court orally instructed the jury on the law that they were to use to guide their deliberations. The instructions included a definition about the Interstate Commerce element of 18 U.S.C. § 922(g). (A867-868) The instruction concluded with the following fact specific direction: "In this regard, there has been evidence that the firearm in question was manufactured in a different state or country than the state where the defendant is charged with possessing it. You are permitted to

36

infer from this fact that the evidence traveled in interstate commerce; however, you are not required to do so." (A867-868)

The jury did not return a verdict on March 23, 2018 and deliberations resumed on Monday, March 26, 2018. (A867) During the deliberations, the jury sent a note to the court which referenced the last sentence of the Interstate Commerce instruction and asked: "do we not take it [Interstate Commerce] in to (sic) consideration, at all?" (A1190-1191) Rather than wait for Mr. Zamichieli to be produced, the district court discussed the question with counsel and formulated a written response, i.e. underlining the last sentence of the typed jury instruction. (A877-882; 1191) Neither party objected to the final language and the written response was submitted to the jury. (A881-882) The contents of the written response were never read into the record and neither the note nor the response was docketed. (DE360-362) A copy of the note and the underlined response was provided by chambers in response to an inquiry concerning the preparation of the appendix for this appeal. (A1190-1191)

Putting aside the problem with the gaps in the record, it is apparent

that the procedure employed by the district court violated Mr. Zamichieli's right to due process in two fundamental ways. First, the failure to produce Mr. Zamichieli for the discussion about the note violated his right to be present during all critical phases of the trial. *See United States v. Toliver*, 330 F.3d 607, 611 (3d Cir. 2003) (citing *Rogers v. United States*, 422 U.S. 35, 39 (1975) and Fed. R. Crim. P. 43(a)).

Second, by responding to the jury question with written instructions about the law and deliberations, the district court failed in its obligation to issue "all instructions to the jury . . . orally in the presence of counsel and the defendant." *United States v. Noble,* 155 F.2d 315, 318 (3d Cir. 1946). The reason for this requirement is "self-evident [in] that a jury cannot perform its duty of determining the guilt or innocence of a defendant accused of a crime unless they know the essential elements of the crime which he is alleged to have committed." *Id.* at 316-317. The cobbled together legal instruction in this case, moreover, implicates the precise concerns articulated by this Court in *Noble* and other cases where similar issues have arisen. *See e.g. Guam v. Marquez*, 963 F.2d 1311, 1314-15 (9th Cir. 1992);

38

*United States v. Perry*, 479 F.3d 885, 893-94 (D.C. Cir. 2007) (failure to read

the definitions of three common terms was error, but harmless due to

minor and well known nature of the terms). The reasons that oral

instructions are required is not only to ensure that the defendant and

counsel have an opportunity to object and correct any error, but also to

"make certain as may be that each member of the jury has actually received

the instructions." *Id.*, at 892 (quoting *United States v. Noble*, 155 F.2d 355, 318

(3d Cir. 1946)). That is, if written instructions are provided, there is no way

to be sure that every juror has read the instruction, and in this case the

practice prevented the defendant from ever seeing the contents of the

instruction.

The question and instruction addressed the Interstate Commerce

element. The government relied upon the testimony of an expert witness

who relied upon hearsay to express an opinion about the source of the

firearm. (A766-777) The jury was evidently struggling to assess that

testimony and determine whether the government had met its burden of

proof on that element, thus the question. The transcript of the discussion of

the issue, which seems to be joined in progress, reveals some disagreement about the contents of the response. (A877-880)

Notwithstanding the disputes, it is apparent that the response included references to other portions of the instructions and the nature of evidence concerning the source of the firearm as an example of circumstantial evidence. (A880-881) So this was not an instance where the court might be permitted to respond to a jury question with a written response such as where the jury asks to review a report that was not admitted into evidence. This was instead a situation where the court was providing substantive legal instructions that were intended to guide the deliberations of the jury on an issue that was determinative of the outcome. It was therefore paramount that an oral response to all jurors should have been provided and the failure to do so was in direct violation of longstanding precedent. The error therefore was plain.

Nor can the error be said to be harmless. The instruction concerned an issue that was evidently troubling the jury. They had begun deliberations the previous Friday, and by the afternoon of March 26, 2018,

had still not reached a verdict. It was only after the written supplemental

instruction was provided to the jury that a guilty verdict was reached. It is

therefore all but certain that the supplemental instruction was important to

the jury and effected the outcome of the case. What cannot be said is that

all of the jurors read the supplemental instruction or that the contents were

ever communicated to all of the jurors. This is precisely the problem

identified by this Court in *Noble*, and it is not an issue that can be deemed

harmless in this circumstance.

The Ninth Circuit recently had occasion to consider a similar

question in *United States v. Bacerra*, 935 F.3d 995 (9th Cir. 2019). The court

concluded that such an error is a structural error, and identified the reasons

written instructions cannot substitute for written instructions. Those

reasons included not only the need to insure that each juror has received

the instructions needed to guide their deliberations, but also the

significance of hearing the judge pronounce those directions.

> The oral charge also performs a second, signaling function that
> cannot be replaced by a printout or a pamphlet. Jury
> instructions are not the judicial equivalent of a car manual or a

cookbook. When an enrobed judge orally charges the jury, the jurors are impressed with the fact that they have been entrusted with the power to decide the defendant's fate. This oral, public ritual helps ensure that 'jurors ... recognize the enormity of their task and ... take [that task] seriously.'

Nancy S. Marder, *Bringing Jury Instructions into the Twenty-First Century*, 81 Notre Dame L. Rev. 449, 465 (2006). By analogy, reading a sermon is not the same as hearing it read in church or synagogue by a pastor or priest or rabbi. If it were, religious leaders would just hand out the sermons and end the services early." *Bacerra*, 935 F.3d at 1001.

The court concluded that "the historic practice of oral jury instruction remains central to the fairness of jury trials." *Id.* In this context, the Court noted that while there has been an evolution in the practice associated with jury instructions, "[b]ut even as the exact form of a trial court's jury charge has evolved, there has always been a bedrock recognition that the trial court must orally charge the jury before deliberations commence." *Id.* at 1001-02.

This Court has not characterized an error such as this as structural, nor has it said it is not structural, and in this case, the determination is not

important because the nature of the error is so obvious and the connection

between the error and the verdict is undeniable. Therefore, regardless of

whether the plain error standard applies, reversal is required.

> **POINT III - A remand for a new sentencing hearing is required because the district court arbitrarily and unfairly limited Mr. Zamichieli's right to advocate for mercy when it precluded him from filing a sentencing memorandum.**

**A.    Standard of Review**

A district court's decision to restrict a defendant's opportunity to

advocate for leniency is reviewed for abuse of discretion. *United States v.*

*Chapman*, 915 F.3d 139 (3d Cir. 2019).

**B.    Argument**

After the jury returned a guilty verdict, Mr. Zamichieli's relationship

with his attorney deteriorated to the point where he decided to proceed *pro*

*se*. (A889-897) This decision led to some confusion and delay in the

resolution of post-trial motions and sentencing. (A900-907) Part of the

problem was due to difficulties Mr. Zamichieli encountered receiving mail

at the Federal Detention Center in Philadelphia. (A900-907) Despite the

problems, Mr. Zamichieli did his best to comply with court orders and the

Rules of Criminal Procedure. To that end, on June 26, 2018, Mr.

Zamichieli's request for permission to file amended objections to the

presentence report (PSR) was granted. (DE379) Unfortunately, he did not

become aware that permission was granted until July 23, 2018. (A901-907)

In the meantime, on July 7 or 8, 2018, Mr. Zamichieli received the final PSR.

(A904-905) When Mr. Zamichieli learned on July 23 that he had until July

27 to file his amended objections, he was unsure how to proceed because

he had already received what he understood was the final report, and had

little time to respond, so he filed nothing. (A905)

On August 9, 2018, Mr. Zamichieli appeared in court and explained

what had occurred and why he was not prepared to proceed with the

sentencing. (A901-907) He also indicated that he had only received the

government's sentencing memorandum the day before and had not had an

opportunity to either respond or submit his own sentencing memorandum.

(A914-915) The district court responded by explaining to Mr. Zamichieli

44

that he did not have a right to file a response to either the government's post-trial Rule 29 brief or to the government's sentencing memorandum and related materials. (A915-916) The court further indicated that the only response he was entitled to file was objections to anything new in the final PSR. (A916-918) Mr. Zamichieli was given until August 28 to file those objections and sentencing was scheduled for September 10, 2018. (A918) The district court concluded the hearing by establishing a five-page limit for any objections, and forbidding Mr. Zamichieli from filing anything else, including a sentencing memorandum. (A922) Mr. Zamichieli respectfully submits that the district court abused its discretion and unfairly deprived him of his right to a full opportunity to advocate for a more lenient sentence when it precluded him from filing a sentencing memorandum or a response to the government's sentencing memorandum.

In *United States v. Chapman*, 915 F.3d 139 (3d Cir. 2019), this Court ordered a new sentencing hearing because the district court had denied the defendant's request for a continuance. The sentencing had already been continued several times when the defendant appeared in court on March

45

10, 2017 and asked for an additional delay. The defendant, who was detained, explained that he was unaware that the court had scheduled the hearing until that day when he was transported to the courthouse. Defense counsel had evidently misread the scheduling order and failed to communicate the date to Mr. Chapman. As a result, Mr. Chapman's family was not present and had not yet submitted letters to the court. Mr. Chapman observed that the letters might not "help" him much but he believed they were important. The district court denied Mr. Chapman's request for a one-week continuance and proceeded with the hearing.

In determining that the district court abused its discretion, this Court observed that while allocution is not a constitutionally protected right, it is "a substantial right because it could influence a court's sentencing decision. *Id.* at 145. This Court also noted that in *Green v. United States*, 365 U.S. 301, 304 (1961) (plurality opinion), the Supreme Court stated that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Chapman*, 915 F.3d at 145. The "critical purpose" of allocution is threefold: "(1) to allow

46

the defendant to present mitigating circumstances, (2) to permit the defendant to present personal characteristics to enable the sentencing court to craft an individualized sentence, and (3) to preserve the appearance of fairness in the criminal justice system." *Id*. (citing *United States v. Ward*, 732 F.3d 175, 181 (3d Cir. 2013)). Moreover, Fed. R. Crim. P. 32 grants a defendant the right to present "any" material he believes might appeal to the Court's compassion. When the court unjustifiably limits a defendant's ability to submit mitigating information, the purpose of allocution is undermined and prejudice is presumed. *Id*.

In this case, the district court arbitrarily decided to preclude Mr. Zamichieli from submitting a sentencing memorandum or anything else that might be mitigating. Instead, Mr. Zamichieli was restricted to submitting written objections to the presentence report. He could not otherwise argue for mercy in a written submission. In contrast, the government was allowed to submit a sentencing memorandum, written objections to the presentence report, and a response to Mr. Zamichieli's objections to the report. (DE387; 388; 395) Mr. Zamichieli was, therefore,

47

not only restricted from an important form of advocacy, but was subjected to restrictions that were materially different from the rules that were applied to the United States.

The appearance of unfairness created by this disparate treatment further highlights the need for a remand. Otherwise, one is left with the impression that the government is given a wider latitude to advocate at sentencing than the person who stands before the court to learn his fate. This goes to the heart of the integrity and public reputation of the proceeding. *Chapman*, 915 F.3d at 146 (citing *United States v. Plotts*, 359 F.3d 247, 251 (3d Cir. 2004) and *United States v. Adams*, 252 F.3d 276, 288 (3d Cir. 2001)).

Finally, although reasonable restrictions on sentencing advocacy are permitted, *e.g.*, requiring that comments remain relevant to the question of the appropriate sentence, when the restrictions undermine the opportunity to seek mercy, prejudice is presumed. *Chapman*, 915 F.3d at 145. There is, therefore, no requirement that Mr. Zamichieli demonstrate that there was "opportunity for such a violation to have played a role in the district

court's sentencing decision." *Id.* at 146 (quoting *Adams*, 252 F.3d at 287).

The one-sided, explicit restriction on written advocacy that applied to Mr.

Zamichieli set the stage for the "opportunity for such a violation." *Id.*

Rather than "encourg[ing] [Mr. Zamicieli] to present all available relevant

and illuminating information," the district court imposed a restraint that

did the exact opposite. *See Id.* at 145. Moreover, the restraint was visited

upon Mr. Zamichieli alone, a circumstance that in both appearance and fact

placed him a position that was materially distinct from that occupied by

the government. A remand for resentencing, therefore, is required.

> **POINT IV– The district court failed to resolve a dispute about the statute subsection involved in Mr. Zamichieli's 1994 aggravated assault conviction and improperly concluded that Mr. Zamichieli's prior conviction for assault was a crime of violence for ACCA purposes.**

A.    **Standard of Review**

The classification of a prior conviction as a crime of violence is a

question of law subject to plenary review. *United States v. Peppers*, 899 F.3d

211, 220 (3d Cir. 2018).

**B.    Argument**

Federal law ordinarily authorizes a sentence of up to 10 years imprisonment for the offense of possessing a firearm after conviction of a felony. 18 U.S.C. § 922(g)(1) and § 924(a)(2). Under the Armed Careeer Criminal Act, however, a defendant is subject to a term of no less than 15 years in prison if he has three prior convictions " for a violent felony or a serious drug offense, or both, committed on different occasions from one another. 18 U.S.C. § 924(e)(1). The ACCA defines a violent felony to include "any crime punishable by imprisonment for a term exceeding one year" that:

    (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another ….

Mr. Zamichieli maintains that the district court erred when it concluded that his 1994 aggravated assault conviction qualified as an ACCA predicate without resolving or explaining the resolution of a conflict among the various *Shepard* documents concerning which section of the Pennsylvania aggravated assault statute was involved in that case.

The prosecution of this case commenced in 2012. After two trials and one successful appeal (Third Circuit Dkt. No. 13-2091), the case is back on appeal following a finding of guilt and the imposition of an ACCA enhanced sentence in 2018. Briefing was stayed to await decisions on an issue then pending before this Court and the United States Supreme Court – whether a predicate offense with a recklessness *mens rea* supports application of the Armed Career Criminal enhancement.[3]  Because the recklessness issue was resolved by the Supreme Court in a manner that should help resolve Mr. Zamichieli's appeal in his favor, he respectfully submits that the case should be remanded for resentencing.

**1. The district court did not determine which subsection of the Pennsylvania aggravated assault statute Mr. Zamichieli was convicted of violating in 1994.**

When Mr. Zamichieli appeared for sentencing on September 10, 2018, he maintained that his prior Pennsylvania state conviction for aggravated

---

[3] One of those issues was settled by the June 10, 2021 decision in *Borden v. United States*, --U.S. --, 2021 WL 2367312 (June 10, 2021). Had the Court ruled in favor of the government, Mr. Zamichieli's appeal on this issue would have been foreclosed.

assault under 18 Pa. C.S. § 2702 failed to qualify as a predicate for

application of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e).

(A964-985)[4]  Mr. Zamichieli maintained that the "*Shepard* record"

established that he was convicted of violating 18 Pa. C.S. § 2702(a)(2) or

(a)(3). *See Shepard v. United States*, 544 U.S. 13 (2005). (A965-969) A violation

of section (a)(2) can be established by proof of reckless *mens rea*, which Mr.

Zamichieli argued was insufficient for purposes of ACCA. (A966-967)

---

[4]  The Pennsylvania aggravated assault statute that was in effect in 1994, 18 Pa.C.S. § 2702, is divisible and contains provisions that allow conviction based on "recklessness" and knowing or intentional commission of simple assault on a police officer. Subsections (1) and (2) are first degree felonies, and subsection (3) is a second degree felony. In pertinent part the statute provided:
(a) Offense defined. – A person is guilty of aggravated assault if he:
(1) attempts to cause serious bodily injury to another. Or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a police officer . . . in the performance of duty . . .
(3) attempts to cause or intentionally or knowingly causes bodily injury to a police officer . . . in the performance of duty.

18 Pa. C.S. 2702(a) (West 1983 main volume & 1995 pocket part).

Subsection (a)(3) raises a simple assault to aggravated assault status if the victim was a police officer. Regarding recklessness, the United States Supreme Court confirmed that Mr. Zamichieli's position was correct when it decided *Borden v. United States*, -- U.S. --,  2021 WL 2367312 (June 10, 2021). That decision led to the withdrawal of the appeal in *United States v. Santiago,* Third Circuit Docket No. 16-4194. That said, Mr. Zamichieli respectfully maintains that even if the *Shepard* documents conclusively establish that § 2702(a)(2) was not involved, and instead document that he was convicted of violating § 2702(a)(3), *i.e.*, simple assault upon a police officer remand is required because that offense can be committed recklessly.

The government, relying upon some different "*Shepard* documents," maintained that the record established that Mr. Zamichieli was convicted of violating either 18 Pa. C.S. § 2702(a)(3) or (a)(4), which they maintained either avoided the recklessness issue or, if (a)(4) was involved, would implicate the binding precedent in *United States v. Ramos,* 892 F.3d 599 (3d Cir. 2018). (A969-974) Rather than determining which section of the

aggravated assault provision was implicated or how the conflict among the various *Shepard* documents was resolved, the district court simply stated that "aggravated assault [is a] qualifying conviction[] under the Armed Career Criminal Act," and reimposed a 210-month sentence. (A985)

The *Shepard* documents at issue included conflicting judgments and a written explanation by the state court sentencing judge which specifically referenced 18 Pa. C.S. § 2702(a) - but not a specific subsection in all cases. (A964-971; 981-998; 1113-1119) The district court never explained how or whether the material discrepancy was being resolved. Instead the court stated, "aggravated assault is a crime of violence." (A985) That is not necessarily a correct statement of law and more importantly, it failed to address the very specific material dispute that was before the court.

Mr. Zamichieli respectfully submits that a remand for resolution of the dispute concerning the nature of his predicate conviction is required because if that question is resolved in his favor, *i.e.* he was convicted under § 2702(a)(2) or (3), he would not be ACCA eligible and will have served the maximum term permitted by law, *i.e.* 10 years, for violating 18 U.S.C. §

922(g).

**2. The Pennsylvania offense of aggravated assault on a police officer requires only proof of a simple assault which implicates only bodily injury, and is therefore not a "violent felony" requiring the use of strong physical force.**

As noted above, federal law ordinarily authorizes a sentence of up to 10 years imprisonment for the offense of possessing a firearm after conviction of a felony. 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Under the Armed Career Criminal Act, however, a defendant is subject to a term of no less than 15 years in prison if he has three prior convictions for a violent felony or a serious drug offense, or both, committed on different occasions from one another. 18 U.S.C. § 924(e)(1). The ACCA defines a "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year" that:

    (ii)    has as an element the use, attempted use, or threatened use of physical force against the person of another ….

As the Supreme Court has explained, the term "force" as used in the ACCA, must be understood to mean "strong physical force*." Johnson v. United States*, 559 U.S. 133, 140 (2010). The Court refused to import the

common law definition of force which extended to any offensive touching. Instead, the Court concluded that "the term 'physical force' means *violent* force – that is, force capable of causing pain or injury to another person. *Id.* at 140 (emphasis in original). Mr. Zamichieli recognizes that the non-precedential decision in *United States v. Costello*, 720 Fed.Appx. 120 (3d.Cir. 2017) rejected this argument, but respectfully submits that precedential authority to the contrary is appropriate.

In applying the ACCA definitions, courts must of course use the categorical approach and "'look only to the statutory definitions'- *i.e.,* the elements- of a defendant's prior offenses, and not 'to the particular facts underlying those convictions.'" *United States v. Dahl*, 833 F.3d 345, 349 (3d Cir. 2016) (quoting *Descamps v. United States*, 133 S.Ct. 2276, 2283 (2013) (in turn quoting *Taylor v. United States*, 405 U.S. 575, 600 (1990)). An offense is not "categorically" a crime of violence under the element-of-force clause if there is "any set of facts" that would support conviction without proof of the intentional use of strong and violent physical force. *See United States v. Hernandez-Hernandez*, 817 F.3d 207, 211 (5th Cir. 2016). In short, the court

must determine not what the defendant did, but how broadly the statute sweeps, in order to determine whether the use or threat of force is a "constituent part of the crime's legal definition." *Mathis v. United States*, 136 S.Ct. 2243, 2248 (2016).

Under the Pennsylvania simple assault statute there is no requirement that the offense involve the use of "violent physical force." Instead, in a prosecution for aggravated assault on a police officer, the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury. *Commonwealth v. Hewlett*, 2018 Pa.Super 151, 2018 WL 2676141 (2018). *See also Commonwealth v. Butler*, 354 Pa.Super 533, 545 (1986) ("The fact that the officer was not injured is of no consequence as neither statute requires that the officer be injured; all that is necessary is proof that the suspect attempted to cause injury, 18 Pa.C.S.A. § 2702(a)(3), or that he created a substantial risk of bodily injury, 18 Pa.C.S.A. § 5104. The

testimony of the officer indicates that he was struck by appellant after appellant was cornered and instructed not to move. Furthermore, it took the assistance of other officers to subdue appellant. The trial court had sufficient evidence before it to conclude that the Commonwealth proved appellant's guilt as to each crime beyond a reasonable doubt.") *Compare United States v. Ramos,* 892 F.3d 599 (3d Cir. 2018) (18 Pa.C.S.A. § 2702(a)(4) qualifies as a crime of violence for Sentencing Guideline purposes) with *United States v. Mayo*, 901 F.3d 218 (3d Cir. 2018) (18 Pa.C.S.A. § 2702(a)(1) does not meet the violent force requirement for ACCA purposes).

In short, Mr. Zamichieli respectfully submits that there was a failure to prove which provision was violated and the court provided no explanation about why it credited some documents over others. Mr. Zamichieli further submits that if he was convicted under § 2702(a)(3), the absence of a requirement that there be proof of "violent physical force" renders that provision ACCA deficient.

58

**Point V – The district court erred when it concluded that Mr. Zamichieli's 1988 and 1994 convictions for a violation of Pennsylvania's controlled substances act qualified as a predicate offenses for ACCA purposes.**

### A.    Standard of Review

The question of whether a prior conviction qualifies as an ACCA predicate is a question of law subject to de novo review. *United States v. Ramos*, 892 F.3d 599 (3d Cir. 2018).

### B.    Argument

In 1990 and 1997 Mr. Zamichieli was convicted of possession with intent to distribute drugs in violation of 35 Pa. C.S. § 730:113(a)(30). The Presentence Report used both to classify Mr. Zamichieli as ACCA eligible. Mr. Zamichieli objected to the use of these convictions as ACCA predicate offenses, and regardless of an objection he maintains that neither meets the ACCA requirements. (A971) Mr. Zamichieli maintains that the convictions do not qualify because the Pennsylvania statute sweeps more broadly than the Federal Controlled Substances Act because the Pennsylvania statute includes attempts which are not included in the federal statute.

At sentencing Mr. Zamichieli raised numerous objections to the use

of his prior Pennsylvania drug convictions as ACCA predicates, including

an *anti-Shepard* document which sought to delve into the facts of his 1990

conviction to show that he really only possessed drugs for personal use,

notwithstanding the judgment and other *Shepard* documents which

documented a conviction for possession with intent to distribute. (A984)

But also included among his objections was an argument that the

Pennsylvania drug distribution statute included more conduct than the

federal controlled substances act and that it could not, therefore, be

included as an ACCA predicate. (A971-972) The district court relied upon

the decision by this Court in *United States v. Glass*, 904 F.3d 319 (3d Cir.

2018) to deny Mr. Zamichieli's objection to the use of his 1988 and 1994

drug convictions as ACCA predicates. (A972-973) Since then, this Court

decided *United States v. Daniels*, 915 F.3d 148, 160-161 (3d Cir. 2019). There,

this Court, in addition to affirming the continued vitality of the decision in

*United States v. Gibbs*, 656 F.3d 180 (3d Cir. 2011), specifically concluded

that a conviction under 35 PA. C.S. § 730:113(a)(30) was an ACCA predicate

despite the fact that the Pennsylvania statute included convictions for attempts. Relying on *Gibbs,* the Court in *Daniels* held that the ACCA definition of "serious drug offense" includes attempts and that the Pennsylvania statute therefore was no broader than the ACCA definition.

While Mr. Zamichieli recognizes that *Glass, Gibbs* and *Daniels* are currently binding authority, he nevertheless respectfully maintains that those decisions have been undermined by the decision in *United States v. Nasir*, 982 F.3d 144 (3d Cir. 2020) (*en banc*) and further notes that he raises this issue for purposes of preservation should those decisions be reconsidered because the term "involving" as used in the ACCA is vague for Constitutional purposes.

61

# CONCLUSION

For the foregoing reasons, Appellant Wheeler Zamichieli respectfully submits that his sentence should be vacated and that his case should be remanded for a new trial or sentencing hearing.

Respectfully submitted,

RICHARD COUGHLIN
Federal Public Defender

s/ *Richard Coughlin*

Richard Coughlin
Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, NJ 08102
(856) 757-5341

Attorney for Appellant
Wheeler Zamichielli

Dated:        March 11, 2022
             Camden, New Jersey

**CERTIFICATE OF COUNSEL, OF SERVICE, AND OF COMPLIANCE**

Richard Coughlin hereby certifies as follows:

1.      I am the Federal Public Defender and I am admitted to practice

before the United States Court of Appeals for the Third Circuit.

2.      I caused an electronic copy of the Brief and Appendix to be filed

today, March 11, 2022. Seven copies of the Brief and four copies of the

Appendix will be delivered to the Clerk's Office.

3.      I also caused a copy of the Brief and Appendix to be served today,

March 11, 2022, upon the United States by the Notice of Docketing Activity

generated by the Third Circuit's electronic filing system and by United

States mail, upon:

> Kevin L. Jayne
> Assistant United States Attorney
> Philadelphia, PA 19106

4.      The text of the electronic brief is identical to that in the paper copies.

5.      The brief and appendices have been scanned with Symantec

Endpoint Protection Version 14.0 and no virus was detected.

6.      The brief, which is more than thirty pages long, complies with the type-volume limitations contained in the Federal Rules of Appellate Procedure Rule 32(a)(7)(B)(i). The word count on the Word 2016 word-processing system used to prepare the brief states that the brief contains 12,331 words, which does not exceed the Rule's 13,000 word limit.

The foregoing is true and correct to the best of my knowledge and information. I am aware that if any of the foregoing is willfully false, I am subject to sanctions.

Respectfully submitted,

s/ *Richard Coughlin*

Richard Coughlin
Federal Public Defender

Date:   March 11, 2022
        Camden, New Jersey

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,    :

                    APPELLEE,        :

            v.                       :        APPEAL NO. 18-3053

WHEELER ZAMICHIELI,                  :

                    APPELLANT.       :
_____

ON APPEAL FROM A FINAL JUDGMENT OF CONVICTION AND
SENTENCE OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(EDPA CRIMINAL NO. 12-182 (PBT))
_____

APPELLANT'S APPENDIX
VOLUME I OF V (pgs.1-9)
_____

RICHARD COUGHLIN
Federal Public Defender

800-840 Cooper Street, Suite 350
Camden, New Jersey 08102
(856)757-5341

Attorney for Appellant
Wheeler Zamichieli

# TABLE OF CONTENTS

**Page**

**Volume I** (bound in brief)

NOTICE OF APPEAL................................................................................1

JUDGMENT ............................................................................................3

**Volume II**

APPOINTMENT ORDER.........................................................................10

DOCKET SHEET ...................................................................................11

HEARING TRANSCRIPT - JANUARY 22, 2013 ...............................................55

HEARING TRANSCRIPT - JANUARY 30, 2013 ...............................................80

HEARING TRANSCRIPT - JANUARY 31, 2013 .............................................154

HEARING TRANSCRIPT - FEBRUARY 4, 2013 ............................................215

HEARING TRANSCRIPT - FEBRUARY 13, 2018 ..........................................267

**Volume III**

TRIAL TRANSCRIPT – MARCH 19, 2018 ......................................................285

TRIAL TRANSCRIPT - MARCH 20, 2018......................................................322

TRIAL TRANSCRIPT - MARCH 22, 2018......................................................428

**Volume IV**

TRIAL TRANSCRIPT - MARCH 23, 2018......................................................666

TRIAL TRANSCRIPT - MARCH 26, 2018......................................................876

HEARING TRANSCRIPT - MAY 16, 2018 ..................................................... 888

HEARING TRANSCRIPT - AUGUST 9, 2018 ................................................ 903

**Volume V**

SENTENCING TRANSCRIPT - SEPTEMBER 10, 2018 ................................ 925

DEFENDANT MOTION TO WAIVE COUNSEL ....................................... 1003

DEFENDANT MOTION FOR JUDGEMENT OF AQUITTAL
UNDER RULE 29 AND 33 ............................................................................. 1027

MOTION TO AMEND
    OBJECTIONS TO PRESENTENCE REPORT ...................................... 1029

MEMORANDUM IN SUPPORT OF
    RULE 29 AND RULE 33 MOTIONS ...................................................... 1032

GOVERNMENT RESPONSE TO
    RULE 29 AND RULE 33 MOTIONS ...................................................... 1081

GOVERNMENT SENTENCING MEMORANDUM .................................. 1094

GOVERNMENT OPPOSITION TO CONTINUANCE .............................. 1109

SENTENCING DOCUMENTS ...................................................................... 1113

JURY NOTE ................................................................................................... 1190

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :

                        :

      VS.               :      CRIMINAL CASE Nô. 12-182

                        :

WHEELER ZAMICHIELI         :

## NOTICE OF APPEAL

COMES NOW the Defendant, Wheeler Zamichieli, pro se, and hereby gives notice of appeal from the judgement and sentence imposed by this Court on September 10, 2018.

Respectfully submitted this 1fth day of September, 2018.

*Wheeler Zamichieli*

Wheeler Zamichieli
Tnst.#67271-066
Federal Detention Center
P.O. Box 562
Philadelphia, PA. 19105

1

A1

CERTIFICATE OF SERVICE


I, Wheeler Zamichieli, hereby certify that, a true and
correct copy of Defendant's Notice of Appeal has been sent U.S.
Certified Mail#7082 2410 0000 6690 5930 postage prepaid, to the Clerk
of Courts for the United States Eastern District Court of Pennsyl-
vania, and served upon the person below. via Electronic Case Filing
System ("ECF") addressed as followed:


ASSISTANT U.S. ATTORNEY
KEVIN JAYNE
615 CHESTNUT STREET
SUITE 1250
PHILA, PA. 19106


Date: September 11, 2018

Respectfully Submitted,
*Wheeler Zamichieli*
Wheeler Zamichieli
Inst#67271-066
Federal Detention Center
P.O. Box 562
Philadelphia, PA. 19106


2

A2

AO 245B (Rev 02/18)   Judgment in a Criminal Case
                      Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|---|
| v. | ) | |
| WHEELER ZAMICHIELI | ) | Case Number:  DPAE2:12CR000182-001 |
| | ) | USM Number:  67271-066 |
| | ) | Benjamin Cooper, Esq. |
| | ) | Defendant's Attorney |

**FILED**

SEP 17 2018

KATE BARKMAN, Clerk
By_____ Dep. Clerk

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☑ was found guilty on count(s)      1
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses·

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18:922(g)(1) and 924(e) | Felon in Possession of a Firearm | 8/16/2011 | 1 |

The defendant is sentenced as provided in pages 2 through      7      of this judgment. The sentence is imposed pursuant to
the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____   ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence,
or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution,
the defendant must notify the court and United States attorney of material changes in economic circumstances.

9/10/2018
Date of Imposition of Judgment

_Petrese B. Tucker_
Signature of Judge

Petrese B. Tucker, United States District Court Judge, EDPA
Name and Title of Judge

September 14, 2018
Date

A3

AO 245B (Rev 02/18)   Judgment in Criminal Case
                      Sheet 2 — Imprisonment

Judgment — Page    2    of    7

DEFENDANT: WHEELER ZAMICHIELI
CASE NUMBER: DPAE2:12CR000182-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

210 months with credit for time served

☐ The court makes the following recommendations to the Bureau of Prisons.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____    _____ ☐ a.m.   ☐ p.m.   on ___    ___

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p m on

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows.

Defendant delivered on _____    _____    to    ___ ___

at ___ ___    , with a certified copy of this judgment.

UNITED STATES MARSHAL

By _____

DEPUTY UNITED STATES MARSHAL

A4

AO 245B (Rev 02/18)   Judgment in a Criminal Case
Sheet 3   - Supervised Release

Judgment   Page  __3   of   7

DEFENDANT:   WHEELER ZAMICHIELI
CASE NUMBER:   DPAE2:12CR000182-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of .

5 years with conditions

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse  *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer  *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

A5

AO 245B (Rev  02/18)   Judgment in a Criminal Case
              Sheet 3A -  Supervised Release

Judgment  Page _____ 4 _____ of _____ 7 _____

DEFENDANT: WHEELER ZAMICHIELI
CASE NUMBER: DPAE2:12CR000182-001

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature ___ __                    __ ·             ·          Date ___ __ -

A6

Case: 18-3053   Document: 52   Page: 82   Date Filed: 03/11/2022

Case 2:12-cr-00182-PBT  Document 03  Filed 09/17/18  Page 9 of 7

AO 245B (Rev 02/18)  Judgment in a Criminal Case
          Sheet 3B  – Supervised Release

DEFENDANT:  WHEELER ZAMICHIELI
CASE NUMBER:  DPAE2:12CR000182-001

## ADDITIONAL SUPERVISED RELEASE TERMS

It is respectfully recommended that sentence be imposed as follows:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the
defendant, Wheeler Troy Zamichieli, is hereby committed to the custody of the Bureau of
Prisons to be imprisoned for a term of 210 months with credit for time served.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term
of five years. Within 72 hours of release from the custody of the Bureau of Prisons, the
defendant shall report in person to the probation office in the district to which the defendant is
released.

While on supervised release, the defendant shall not commit another federal, state, or local
crime, shall be prohibited from possessing a firearm or other dangerous device, shall not possess
an illegal controlled substance, shall submit to the collection of a DNA sample, and shall comply
with the other standard conditions that have been adopted by this Court. The defendant must
submit to one drug test within 15 days of commencement of probation and at least two tests
thereafter as determined by the probation officer In addition, the defendant shall comply with
the following special conditions:

       The defendant shall provide the U.S. Probation Office with full disclosure of his financial
       records to include yearly income tax returns upon the request of the U.S. Probation
       Office. The defendant shall cooperate with the probation officer in the investigation of his
       financial dealings and shall provide truthful monthly statements of his income.

The defendant shall notify the United States Attorney for this district within 30 days of any
change of mailing address or residence that occurs while any portion of the assessment remains unpaid.

It is further ordered that the defendant shall pay to the United States a total special assessment of
$100, which shall be paid in installments of $25 per month.

A7

AO 245B (Rev 02/18) Judgment in a Criminal Case
Sheet 5 Criminal Monetary Penalties

| | | | Judgment | Page | 6 | of | 7 |

DEFENDANT: WHEELER ZAMICHIELI
CASE NUMBER: DPAE2:12CR000182-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| TOTALS | $ 100.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTALS | $ _____ 0.00 | $ _____ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the   ☐ fine  ☐ restitution.

    ☐ the interest requirement for the   ☐ fine  ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

A8

AO 245B (Rev 02/18) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Case 2:12-cr-00182-PBT  Document 103  Filed 09/17/18  Page 7 of 7

Judgment · · Page   7   of   7

DEFENDANT: WHEELER ZAMICHIELI
CASE NUMBER:  DPAE2:12CR000182-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☐  Lump sum payment of $ _____ __ due immediately, balance due

    ☐  not later than ___ · ___ , or
    ☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

B  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

C  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence ___ (e.g., 30 or 60 days) after the date of this judgment; or

D  ☑  Payment in equal  monthly  (e.g., weekly, monthly, quarterly) installments of $  25.00  over a period of  4  ___ (e.g., months or years), to commence  30  (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E  ☐  Payment during the term of supervised release will commence within ___ ___ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States·

Payments shall be applied in the following order. (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

A9